**In re William Henderson BARTON, Jr. and Barbara M. Barton, Debtors-in-Possession.**

**Bankruptcy No. 381–03432.**

United States Bankruptcy Court, M.D. Tennessee.

Dec. 21, 1984.

William H. Tate, Nashville, Tenn., for debtors.

Marc McNamee, Nashville, Tenn., for Dearborn & Ewing.

E. Reynolds Davies, Jr., Nashville, Tenn., for FDIC.

## ORDER

GEORGE C. PAINE, II, Bankruptcy Judge.

This matter is before the court on a motion by the debtors-in-possession (hereinafter referred to as "debtors") to compromise and settle a $24,051.79 secured claim of Dearborn & Ewing (hereinafter referred to as "D & E") for $13,500. The Federal Deposit Insurance Corporation (hereinafter referred to as "FDIC"), an unsecured creditor of the estate, has objected to the compromise, arguing that the best interests of the estate would be served by the debtors avoiding the transfer of security to D & E as a fraudulent conveyance pursuant to 11 U.S.C. § 548 (West 1979). On consideration of the testimony of witnesses, exhibits, statement of counsel, and the entire record, the court concludes that the compromise and settlement between the debtors and D & E is in the best interests of the estate and should be APPROVED.

The following shall represent findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

In early September, 1981, the debtors, concerned about the viability of their companies as well as their liability should the companies fail, approached the law firm of D & E. D & E agreed to perform legal services for the debtors, provided that certain collateral was pledged to D & E to ensure payment for services performed. The debtors, on September 4, 1981, executed a deed of trust note for $100,000, secured by the debtors' residence and a $100,000 second preferred ship mortgage on a vessel owned by a partnership in which the debtors were partners. Thereafter, D & E expended a considerable amount of time and effort in protecting the debtors' interests, representing a number of companies in which the debtors hold stock.

The FDIC has asserted that the security provided D & E by the debtors is avoidable as a fraudulent transfer pursuant to 11 U.S.C. § 548 (West 1979). The FDIC argues that D & E's mere promise to perform future services is not an equivalent value to the security transferred by the debtors to D & E. The FDIC also introduced the debtors' statements and schedules into evidence, arguing that the debtors were either insolvent on the date of the transfer to D & E or were made insolvent as a result of the transfer. Finally, the FDIC argues that the services performed by D & E were not performed for the debtors but were performed for other corporations.

The debtors as well as D & E argue that the debtors would in all likelihood not succeed if they brought a fraudulent transfer claim against D & E. These parties point out that D & E's promise to perform legal services for the debtors was a valuable right transferred for the security in question. In furtherance of the agreement between D & E and the debtors, D & E performed numerous legal services for companies in which the debtors had an equity interest as well possible secondary liability. D & E and the debtors argue that a fraudulent transfer claim based on these facts would spawn complex litigation in

which the debtors' chances of success are minimal.

 Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure, this court may approve a compromise and settlement if such compromise is in the best interest of the estate. *In re Fidelity America Financial Corp.*, 43 B.R. 74, 76 (Bankr.E.D.Pa.1984). In deciding whether to approve a compromise, courts consider the four criteria set forth by the Eighth Circuit Court of Appeals in the case of *Drexel v. Loomis*, 35 F.2d 800 (8th Cir. 1929). *See, e.g., Patel v. Patel*, 43 B.R. 500, 504 (N.D.Ill.1984); *Fogg v. Sherman Homes, Inc.*, 28 B.R. 176, 177 (Bankr.D.Me. 1983). The four factors set forth by the *Drexel* court are:

(a) The probability of success in the litigation;

(b) The difficulties, if any, to be encountered in the matter of collection;

(c) The complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it;

(d) The paramount interest of the creditors and a proper deference to their reasonable views in the premises.

*Drexel* at 806.

 In the present case, the court concludes that the interest of the estate is best served by settlement of D & E's secured claim. If the debtors were to bring a fraudulent transfer claim against D & E, it is unlikely that the elements could be established or that the debtors would be successful.

The debtors provided D & E with collateral to secure any future advances of legal services. D & E properly perfected their security interest by filing a financing statement, recording the second secured mortgage, and paying the necessary taxes. The services provided by D & E benefited the debtors to the extent that it protected their interest in numerous companies. The court holds that if the debtors were to proceed with a fraudulent transfer claim against D & E, the litigation would, in all likelihood, be protracted and expensive. The estate is benefited by a compromise of this secured claim for fifty percent of its claimed value. Accordingly, the court OVERRULES the FDIC's objection and APPROVES the compromise and settlement between the debtors and D & E for $13,500.

IT IS, THEREFORE, SO ORDERED.